**BEVERLY HALL CORPORATION**

v.

**Dr. Paul P. RICCHIO, Frank Fedele, Jack C. Kindle and Peter A. Poulos.**

**Appeal of Dr. Paul P. RICCHIO and Frank Fedele, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 9, 1995.

Decided May 19, 1995.

---

**10.** Act of June 9, 1936, Ex.Sess., P.L. 13, *as amended,* 47 P.S. §§ 794–796.

Paul S. Diamond, for appellants.

Robert G. Moffett, for appellees.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

Dr. Paul P. Ricchio and Frank Fedele (hereinafter collectively referred to as "Ricchio") appeal from an order of the Court of Common Pleas of Bucks County granting the petition and supplemental petition of the custodian/receiver of Beverly Hall Corporation (Corporation). The heart of the present dispute is the trial court's order that the custodian/receiver determine the membership of the Beverly Hall Corporation and the Beverly Hall Foundation and conduct a plebiscite in accordance with the Pennsylvania Nonprofit Corporation Law of 1988 (Law) [1] for the purpose of electing a board of directors and adopting new by-laws for the two corporations. We affirm.

## I. PRIOR HISTORY

The history of this case has been set forth previously by this court in *Poesnecker v. Ricchio,* 158 Pa.Commonwealth Ct. 459, 631 A.2d 1097 (1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 727, 130 L.Ed.2d 632 (1995). Therefore, the facts leading to the within appeal may be stated briefly as follows.

The secret religious organization known as the "Grand Fraternity, Fraternitas Rosae Crucis, and All Associate Fraternities" (Fraternity) exists under "Organic Laws" drafted and executed by R. Swinburne Clymer on December 17, 1962. The Fraternity is in part religious in nature through a subsidiary body called "The Church of Illumination."

Pursuant to the Organic Laws, the Fraternity is a hierarchy and as such, all authority and power to govern, rule and regulate the Fraternity is vested in, and conferred upon, a Supreme Grand Master, and him alone, as Supreme Hierarch. The Supreme Grand Master is to select his successor from a Council of Three. The Organic Laws also designate a Council of Seven as a separate entity under the jurisdiction of the Supreme Grand Master and Director General [2] with the power to act in cases of emergency.

The Fraternity conducts all business through a Pennsylvania nonprofit corporation named Beverly Hall Corporation. Beverly Hall Corporation was founded at the same time as the Fraternity, sometime prior to 1921. A decree of incorporation was entered on May 25, 1921. The designated purpose

---

1. 15 Pa.C.S. §§ 5101–6162.

2. The Church of Illumination, the Beverly Hall Corporation, and the Beverly Hall Foundation are overseen by a Director General.

was "for the organization and maintenance of an institution for education, religious and fraternal purpose of its members...."

The Certificate of Incorporation provides for members to be accepted in accordance with its by-laws. By-laws were submitted to the trial court; however, the date and manner of their enactment is not apparent. Appended to the document embodying the by-laws were minutes of a July 16, 1965 meeting of the members of the nonprofit corporation in which the three persons present were designated as its members.

The Fraternity owns all property in the name of Beverly Hall Foundation, also a nonprofit corporation. The Beverly Hall Foundation was originally incorporated as of July 8, 1941. The purpose of the foundation is to hold title to the "property, real and personal, of Beverly Hall Corporation."

On October 4, 1983, Gerald Poesnecker assumed the office of Supreme Grand Master. In this capacity, Mr. Poesnecker assembled the fraternal/religious leadership of the several organizations and assumed to act as the chief executive engaging in the administrative, financial and business functions. The financial records and internal controls relating to the business affairs of the several organizations were inadequate when Mr. Poesnecker assumed leadership. The trial court found that these functions and processes had not improved under Mr. Poesnecker's control.

Some of the leaders, including Ricchio and Fedele became disenchanted with Mr. Poesnecker's leadership and in September 1989, after two previous meetings in 1987 and 1988, a meeting was held of the Council of Seven to depose Mr. Poesnecker as Supreme Grand Master and designate a replacement. As a result, Ricchio and the other disenchanted leaders took over and physically occupied various buildings and administrative offices at Beverly Hall, the site of the Fraternity, in Hilltown Township, Quakertown, Bucks County, Pennsylvania.

Thereafter, Mr. Poesnecker and two other individuals instituted an action in equity in the trial court to enjoin the dissident group from interfering with the functions of Mr. Poesnecker in the administration of the several organizations. On February 5, 1992, the trial court entered a decree nisi ordering, *inter alia*, that a custodian/receiver be appointed to determine the membership of the corporations and to conduct a plebiscite of said membership for the purpose of making appropriate clarifying amendments to the articles of incorporation, and to provide for the election of directors and officers of the corporations in accordance with the Law.

After the filing of post-trial motions by both Mr. Poesnecker and Ricchio, and upon agreement of the parties, the trial court appointed a custodian/receiver with an agreed order entered on May 27, 1992 and further supplemented by order dated June 23, 1992. By order dated January 14, 1993, the trial court denied the post-trial motions of Mr. Poesnecker and Ricchio.

Ricchio appealed the trial court's order denying the post-trial motions to this court. This court affirmed the trial court's order holding that (1) the trial court did not violate the United States and the Pennsylvania State Constitutions by concluding that Mr. Poesnecker had not been validly removed as Supreme Grand Master because Mr. Poesnecker was not removed from the position as a result of a decision of the highest adjudicatory authority of the Fraternity; (2) the trial court did not violate the United States and Pennsylvania State Constitutions by ordering a plebiscite of the members of the two nonprofit corporations; and (3) the trial court correctly removed Poesnecker from his corporate positions, while retaining him in his religious leadership position as Supreme Grand Master. *See Poesnecker.*

## II. PRESENT APPEAL

With respect to the present appeal, the trial court set forth the following facts. On March 30, 1994, the appointed custodian filed a petition to proceed in his charge to determine the membership and hold a plebiscite. A hearing on the petition was held before the trial court on June 9, 1994, and the appointed custodian submitted a supplemental petition on June 23, 1994.

The petition stated that the 1921 Articles of Incorporation of the Beverly Hall Corporation provided for membership as follows:

The said corporation is to consist of the subscribers hereto and such other male and female persons who shall hereafter apply for membership therein and be accepted as members thereof, under terms and conditions as shall be prescribed by the By–Laws of the said corporation.

One set of by-laws of Beverly Hall Corporation[3] set forth requirements for membership in the following fashion in Article II:

Section 1.—QUALIFICATIONS—All persons, regardless of race, color or sex, of good moral character, who have been admitted to membership in The Fraternity, in any of its orders, degrees or subordinate lodges or the Church of Illumination are eligible to membership in this corporation, upon application made by such member and approved by the Board of Directors.

Section 2.—CLASSIFICATION—The members shall be classified as voting and non-voting members. Only members who have been admitted to the inner or esoteric work of The Fraternity may vote at members' meetings. The non-voting members may attend members' meetings, bring before such meeting any subject discuss any pending business and act in an advisory capacity.

The appointed custodian, in his supplemental petition, proposed to solicit applications for corporate membership from all persons designated by the parties to meet these qualifications (i.e., membership in the Fraternity or any of the related orders). He drafted a form letter advising the potential members of his court-appointed mission and stating that, after 60 days, he intended to determine the corporate membership and conduct a plebiscite to approve current by-laws and elect officers and directors. In pertinent part, the letter specifically addressed membership application as follows:

I have examined the minutes of the corporation and solicited mailing lists from both Dr. Gerald Poesnecker and Dr. Paul Ricchio of those persons they feel are "members".

I have reason to believe that you are either a member of the corporation or may be eligible, according to the By–Laws, for membership.

If you believe yourself to be a member of the corporation, please send me documentation. If you believe you are eligible for membership under the By–Laws, please complete the enclosed application and return it to me.

You are not required to send any documentation or application for membership. However, if you choose to do so you waive any continued confidentiality of your membership in Beverly Hall Corporation, the Foundation, the Fraternity, any of its orders, degrees or subordinate lodges of the Church of Illumination.

The enclosed application contained a checklist for the various orders of which the applicant claimed to be a member, as well as a further warning:

Please Note: You are not required to apply for membership in the Beverly Hall Corporation, but if you do, you will waive any continued confidentiality of your membership in the Beverly Hall Corporation, the Foundation, the Grand Fraternity, any of its Orders, Degrees or subordinate Lodges, or in the Church of Illumination.

The appointed custodian recommended that he would fix the membership of the Beverly Hall Corporation from review of the applications and within 45 days convene a meeting of the members at the Fraternity's headquarters at Beverly Hall. The appointed custodian suggested that all members, regardless of classification, be permitted to vote at the meeting to elect three directors of the corporation and to adopt by-laws of the corporation. Contrary to the erstwhile by-laws introduced into evidence before the trial court, the custodian proposed that any member, not just the Supreme Grand Master, be

---

3. The trial court received into evidence two versions of the by-laws for the Beverly Hall Corporation. The trial court relied on the by-laws entered as Exhibit D–5. *See* Reproduced Record

(R.) at 225a–36a. As stated previously in this opinion, the date and manner of the by-laws enactment is not apparent for either version.

eligible for the office of Director General. The proposed by-laws for consideration of the membership mirrored the earlier by-laws in evidence with the exception that they eliminated the distinction between voting and non-voting members. The appointed custodian offered no changes to the Beverly Hall Foundation by-laws in evidence and simply proposed that the Director General of the Beverly Hall Corporation choose three Beverly Hall Foundation directors, in accordance with those Beverly Hall Foundation by-laws.

On August 22, 1994, the trial court ordered the appointed custodian to pursue the above course of action outlined in the petition and supplemental petition. It is from this order that Ricchio now appeals to this court.[4]

Ricchio raises four issues on appeal for review by this court:

1. Does the trial court's order contravene the Federal and State Constitutions by improperly involving the civil courts in religious and doctrinal matters;

2. Did the trial court contravene the Federal and State Constitutions by authorizing its custodian/receiver to conduct a plebiscite of a religious organization's heretofore secret membership;

3. Did the trial court contravene the Federal and State Constitutions by authorizing its custodian/receiver to condition participation in the plebiscite on the custodian/receiver's determination of religious qualifications; and

4. Does the trial court's order contravene the Federal and State constitutions and section 5107 of the Law, 15 Pa.C.S. § 5107, by directing that the nonprofit corporations associated with a private religious organization be governed and managed in a manner contrary to the religious organization's sacred tenets?

As correctly pointed out by the trial court, this court has already addressed and disposed of in *Poesnecker* Ricchio's first two issues raised on appeal. Accordingly, we will not revisit these issues in depth. However, we will address briefly, Ricchio's assertion that the trial court's order forces the revelation of the Fraternity's secret membership list.

■ We recognized in *Poesnecker* that this court could not force a mandatory disclosure of the secret membership list of the religious Fraternity. *Poesnecker*, 158 Pa.Commonwealth Ct. at 474, 631 A.2d at 1105 (citing *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986); *Bates v. Little Rock*, 361 U.S. 516, 523, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960)). We deferred to the trial court to review the method chosen by the appointed custodian to determine the memberships of the two nonprofit corporations to determine if the proposed method was constitutionally permissible.

In accordance therewith, the trial court determined that the appointed custodian's duties in ascertaining the corporate membership and directing a plebiscite would not infringe upon the members' freedom of association or freedom of religion. The trial court concluded that its order did not require a mandatory disclosure of the Fraternity's, or its association's members, despite the fact that the Beverly Hall Corporation's members are drawn from those bodies. While noting that it assumed that the appointed custodian's letters to solicit membership in the Beverly Hall Corporation would be mailed directly to potential members by the parties, the trial court further concluded that the letter and the application form mailed to the potential members by the appointed custodian make it clear that members of the religious organizations are not compelled to identify themselves.

We agree with the trial court's conclusions. Further, the trial court's opinion that the membership rolls, if they exist, need not be revealed to the custodian and the trial court's assumption that the solicitation letters would be mailed directly to the potential members

---

4. After Ricchio appealed to this court, he filed an application for stay pending appeal with the trial court which denied the application on December 19, 1994. On December 22, 1994, Ricchio filed an application for supersedeas with this court requesting a stay of the trial court's order pending appeal. Ricchio's application for supersedeas was denied by order of this court on December 29, 1994.

of the Beverly Hall Corporation by the parties did not result in a violation of the potential members' constitutional rights.

The solicitation letter sent to the potential members by the appointed custodian was sent to the addressee based on minutes of the corporation and solicited mailing lists from both Mr. Poesnecker and Dr. Ricchio of those persons Mr. Poesnecker and Dr. Ricchio felt were members. Therefore, it appears that Dr. Ricchio, at that time, had no problem with willingly revealing the names of the potential members of the Beverly Hall Corporation to the appointed custodian.

As we pointed out in *Poesnecker*, while the membership of the secret Fraternity and the two nonprofit corporations may overlap, we agree with the trial court that corporate membership is distinct from fraternal membership. And, as found by the trial court, the solicitation letter and the application both expressly state that the members of the Fraternity or the other religious organizations are not compelled to identify themselves in order to become a corporate member.

■ Next, Ricchio contends that the plebiscite requires the appointed custodian to determine religious qualifications because the prior by-laws of the Beverly Hall Corporation provide that only members who have been admitted to the inner or esoteric work of the Fraternity may vote at members' meetings. The proposed by-laws for consideration eliminate the distinction between voting and non-voting members.

The trial court correctly concluded that the by-laws upon which Ricchio now relies have never been adopted, were not workable and were legally deficient. Further, the solicitation letter and corporate membership application were sent to potential members based, in part, on mailing lists obtained from Mr. Poesnecker and Dr. Ricchio to individuals that they felt were members of the corporation. Therefore, the appointed custodian was not required to determine based on religious qualifications who was or was not a member

of the Beverly Hall Corporation. Accordingly, we reject Ricchio's contention that the plebiscite requires the appointed custodian to determine religious qualifications.

■ Finally, Ricchio argues that section 5107 of the Law prohibits the appointed custodian's restructuring of the Fraternity's corporate governance. Section 5107 provides as follows:

§ 5107. **Subordination of subpart to canon law**

If and to the extent canon law applicable to a corporation incorporated for religious purposes shall set forth provisions relating to the government and regulation of the affairs of the corporation which are inconsistent with the provisions of this subpart on the same subject, the provisions of canon law shall control to the extent, and only to the extent, required by the Constitution of the United States or the Constitution of Pennsylvania, or both.

15 Pa.C.S. § 5107.

The trial court's order does not require that the Beverly Hall Corporation and the Beverly Hall Foundation be governed and managed inconsistently with the Fraternity's sacred doctrine. The trial court found that Ricchio failed to point to any provision in the Organic Laws which is compromised by the appointed custodian's establishment of the two corporations' structures. We note that on appeal, Ricchio has also failed to direct this court to any such provision in the Organic Laws. As stated above, the by-laws presented into evidence by the parties have never been adopted, were not workable and were legally deficient.

Accordingly, we conclude that the trial court has correctly ordered that the initial, organizational meeting of the Beverly Hall Corporation be held pursuant to the Law, particularly sections 5504 (adoption, amendment and contents of bylaws), 5721 (board of directors), and 5725 (selection of directors), under the direction of the appointed custodian.[5] Thereafter, the members themselves

---

5. In *Poesnecker*, this court recognized that a civil court may resolve disputes involving religious organizations that do not require a determination of ecclesiastical issues. *Poesnecker*, 158

Pa.Commonwealth Ct. at 473, 631 A.2d at 1104 (citing *Presbytery of Beaver–Butler v. Middlesex*, 507 Pa. 255, 262, 489 A.2d 1317, 1320–21, *cert. denied*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d

shall decide precisely how the corporations will be governed.

Accordingly, the August 22, 1994, order of the trial court is affirmed.

### ORDER

NOW, this 19th day of May, 1995, the order of the Court of Common Pleas of Bucks County, dated August 22, 1994, at No. 89–7661–15–5, is affirmed.

167 (1985)). These matters that the court may address involve property, contracts, and financial dealings. *Id.* Therefore, as we held in *Poesnecker*, the trial court in this case has consistently properly applied the statutes governing Pennsylvania nonprofit corporations to the corporate arm of the Fraternity. *Id.*